Filed 5/15/23  In re Kimberly R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re KIMBERLY R. et al., Persons Coming Under the Juvenile Court Law. | B318546 (Los Angeles County Super. Ct. No. 21CCJP03658) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREA E.,<br><br>    Defendant and Appellant. |  |

APPEAL from orders of the Superior Court of Los Angeles County, Robin Kesler, Juvenile Court Referee.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

Andrea E. (Mother) appeals from the juvenile court's jurisdiction findings and disposition orders declaring her children, 16-year-old Kimberly R., 14-year-old Kailey R., 11-year-old Michelangelo H., seven-year-old Harmony M., six-year-old Precious M., and 21-month-old Serenity V., dependents of the court pursuant to Welfare and Institutions Code[1] section 300, subdivision (b)(1). Mother contends there is insufficient evidence that her mental and emotional problems, abuse of marijuana, and failure to provide adult supervision placed the children at risk of serious physical harm. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Referral and Investigation*

On July 13, 2021 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging that for the prior two months Mother had left the children unsupervised for days or weeks at a time. The caller reported Mother would drop items off at the home, then leave. The caller overheard the children arguing with each other about food and being hungry. The caller also reported Mother was

_____

[1] Further statutory references are to the Welfare and Institutions Code.

2

pregnant and might be using crystal methamphetamine and marijuana.

On the same day, a Department social worker went to the family's home, but a woman inside the home told the social worker Mother was sleeping, and the woman slammed the door shut. The social worker contacted the police to request a welfare check, and two police officers arrived at the home. One of the officers knocked several times and announced, "Downey Police," but no one answered the door. The officers and social worker spoke with a neighbor, who stated the children were left home alone for "'only days at a time'" (not weeks). The neighbor also reported hearing fighting among the children when they were left alone.

Later that day the social worker spoke with Jose M., the father of Harmony and Precious. Jose stated he and Mother dated for 10 years before they married in 2017. After one month of marriage, Mother decided to separate from Father, and she left with their children. Father recently filed for divorce and custody of his children because Mother had not allowed him to see the children since February. Jose denied knowledge of Mother's methamphetamine use, but he had seen a photograph of Mother smoking marijuana. Jose reported that when he and Mother lived together, Mother did not consume drugs because Mother knew Jose did not "'like people who do meth.'"

The next day the social worker spoke with Mother by telephone. Mother said she did not answer the door the prior day because she took medication for depression and fell into a deep sleep. Mother denied hearing anyone at the door, and no one told her that someone was at the door.

In a second telephone interview the same day, Mother indicated the fathers of her children were not involved in their lives. Jose did not provide any child support for Harmony and Precious, and he refused to visit the children because of a dispute over child support. Kimberly and Kailey's father, Vidal R., lived in Bakersfield with his new family and did not have contact with the children. Michelangelo's father, Michael H., had been in prison in Tijuana for the past nine years, and he had not been in contact with Mother or Michelangelo. Serenity's father, Louie V., was serving a prison sentence at the California City Correctional Facility. Mother reported she was four months pregnant, but she was no longer in a relationship with Luis S., the father of her unborn child.

Mother disclosed she had been diagnosed with depression, post-traumatic stress disorder (PTSD), bipolar disorder, and anxiety. The children were not residing with her because she was depressed. Mother did not currently have suicidal ideation, but she admitted having suicidal thoughts as recently as two weeks earlier. Mother denied using methamphetamine, but she admitted to smoking "a 'bowl'" of marijuana every four hours to treat her anxiety. Mother reported that if she did not smoke marijuana every four hours, she felt she would "'lose [her] mind.'" Mother's July 19, 2021 drug test was negative.

Mother stated she and the children had not resided at their home since July 4, 2021 because someone called her "a 'snitch and [said] they have paperwork on [her],'" and she was afraid for her and her children's safety. Mother stated Kimberly and Harmony were staying at maternal aunt Monique E.'s home in Visalia, which was a four-hour drive from Mother's home. Michelangelo and Precious were staying at maternal aunt Tina's

home in Compton.  Mother reported that Serenity had always lived with her paternal grandmother, Sylvia V., in Norwalk because "'it is hard with [six] kids.'"  Mother planned to take Serenity back when Mother moved to a larger home.  Mother had been staying at the home of maternal grandmother, Maria D., in South Gate, and Mother's friend Vivian had been going to Mother's home to care for her cats while she was gone.  Mother believed Vivian was at Mother's home when the social worker and police officer knocked on the door, but Vivian did not open the door because she "'was probably scared.'"

The social worker interviewed the children on July 15, 2021.  Kimberly stated that since July 4 she, Precious, and Harmony had been staying at Monique's home, and Kailey and Michelangelo had been staying with Tina.  Serenity lived with Sylvia because the family's current home was too small.  Kimberly disclosed that at the time she was living in the family home, she took care of her siblings with Kailey's help when Mother was not home.  Kimberly said the children went to bed at 8:30 p.m., and Mother would not be home at that time.  Mother was generally home in the mornings, "'but sometimes no.'"

The children provided inconsistent accounts of who was home on July 13 when the social worker and police arrived.  Kailey reported she was home with Michelangelo and her friend Madalyn when the social worker and police knocked on the door.  They did not open the door because they were scared.  Kailey then recanted her story and said the three of them and Madalyn's mother were asleep and did not hear the police knock on the door or windows.  Kailey added that Kimberly, Precious, and Harmony were not home that day because they were visiting Monique.  Kailey said Mother was at the bank that morning and returned

5

home later that night. According to Kailey, Mother would leave their home in the morning but return at night.

Michelangelo said he and Precious had been staying with Tina since July 4. Michelangelo reported that Kimberly and Harmony were in Victorville with Monique, and Kailey and Madalyn were present when the social worker and police came to the home. Michelangelo denied Mother left him and his siblings alone overnight.

Harmony stated she was home with Kimberly, Kailey, Michelangelo, and Precious when the social worker and police came to the home. Harmony reported that when Mother would leave to go to the store, she and her siblings stayed home with Kimberly.

Precious said Mother did not leave her or her siblings home alone. Precious was not present when the social worker and police came to her home, but Kimberly, Kailey, and Harmony were there. Precious stated she was at Monique's home.

B. *The Dependency Petition and Detention Hearing*

On August 6, 2021 the Department filed a dependency petition alleging pursuant to section 300, subdivision (b)(1), that Mother had mental and emotional problems, including depression, PTSD, bipolar disorder, anxiety, and suicidal ideation, and she failed to take her prescribed psychotropic medication. Mother's mental and emotional problems rendered her unable to provide regular care of the children and placed them at risk of serious physical harm. The petition also alleged Mother had a history of substance abuse and abused marijuana. Finally, the petition alleged, "On numerous prior occasions . . . [Mother] left the children home alone without adult

6

supervision for extended periods of time. The children are of such an age as to require adult supervision. The mother's whereabouts were unknown. The mother's failure to provide adult supervision for the children endangered the children's physical health and safety and creates a detrimental home environment, placing the children at risk of serious physical harm, damage, and danger."

At the August 11, 2021 detention hearing, the juvenile court detained Kimberly and Kailey and ordered them released to Vidal. The court detained Michelangelo and placed him with Maria. The court also detained Harmony and Precious and ordered them released to Jose. The court granted Mother monitored visits with each child three times per week for two hours each visit and ordered that the respective fathers could not monitor the visits. The court granted the Department's request for a protective custody warrant for Serenity and an arrest warrant for Sylvia, who could not be located.

C.      *The Jurisdiction and Disposition Report*

As of October 6, 2021 Kimberly and Kailey remained with Vidal in Bakersfield; Harmony and Precious resided with Jose in Inglewood; Michelangelo was in foster care;[2] and Serenity was at large with Sylvia. According to Mother, Kimberly had a medical condition that caused skeletal abnormalities, intellectual disabilities, and respiratory problems. Kimberly denied Mother used drugs or left her and her siblings home without adult

---

[2]      Michelangelo was removed from Maria's care and placed in a foster home because she had a prior dependency case involving severe neglect of one of her children.

7

supervision for extended periods of time. However, Kimberly sometimes did not know where Mother was after Mother left the home. Kimberly reported Mother would cry and sometimes stay in her room all day.

Kailey confirmed Mother sometimes cried in her room. She believed Mother smoked marijuana twice a day outside the home. Although she never saw Mother use marijuana, Mother's clothes smelled of marijuana. Kailey said Mother would take Harmony and Precious with her to run errands, but they would return later the same day. However, there were times when Mother would stay at Maria's home overnight and come home early the next morning before the children woke up.

Michelangelo stated Mother was gone for only two to three hours to shop for food and other items. Harmony disclosed Mother would leave for days without coming home and would not tell the children where she was going. Precious said Kimberly and Kailey took care of her and her siblings when Mother was gone, explaining, "'My mom would leave us but only when we slept at night and she would be back in the morning.'" According to Precious, sometimes Mother would take the children to Maria's home for an overnight stay or bring them to the homes of Monique and Tina. Jose reported Precious told him that on one occasion the children did not eat anything for two days.

Mother denied she left the children home without adult supervision for extended periods of time. She stated she took Precious and Harmony with her when she ran errands and left the three oldest children (Kimberly, Kailey, and Michelangelo) at home because she could not take all of them, especially during the COVID-19 pandemic. Sometimes Monique and Tina took care of the children while Mother ran errands. Mother admitted

8

she had been using marijuana since she was 18 years old, but she denied her marijuana use prevented her from providing care for the children.  Mother kept marijuana in her van and smoked outside the home.  She stopped taking her prescribed psychotropic medication in December 2020 because she was five months pregnant.  Mother had been seeing a therapist for the past five years, and she last saw her therapist in August 2021.

Mother tested positive for marijuana on October 6, 2021.  She also failed to show up for drug testing on seven occasions in October and November 2021.

D.     *The Jurisdiction and Disposition Hearing*

At the December 29, 2021 jurisdiction and disposition hearing, the juvenile court sustained the allegations in the petition under section 300, subdivision (b)(1).  The court explained, "[Mother] does have mental health issues which interfere[] with her abilit[y] to care for her children such that she uses marijuana frequently during the day.  Some of the kids . . . are able to say the truth and the others are not.  The older kids appear to be protecting their mother in that regard.  We do have a report—I think it was Kailey—that her mom would go outside, smoke and come back in smelling of marijuana and she did that numerous times in the day.  [Mother] does have at least one child that is only one and if she's the sole caregiver for the child, she was always under the influence trying to care for this child."  The court added, "[Mother] did leave the kids—some of the kids said that [Mother] wasn't gone long and then finally I believe it was Harmony that was able to tell us that [Mother] was gone up to days at a time."

9

The court declared the children dependents of the court and removed them from Mother's physical custody. The court also removed Michelangelo from his father's custody and Serenity from her father's custody.[3] The court terminated jurisdiction over Kimberly, Kailey, Harmony, and Precious and entered juvenile custody orders granting the respective fathers sole physical custody and joint legal custody with Mother, with each father having tie-breaking authority over parenting decisions. The court also granted Mother one weekly monitored visit with each of the four children.

The juvenile court ordered Mother to participate in a minimum six-month drug/alcohol program with aftercare, random or on-demand drug testing every other week, a 12-step program with court card and sponsor, parenting classes, a psychiatric evaluation, and individual counseling to address case issues, including substance abuse and mental health. The court granted Mother monitored visits with Michelangelo and Serenity with the Department having discretion to liberalize visitation. The court ordered the Department to provide housing and transportation assistance for Mother and to confer with Mother on selection of a drug testing site closer to her home.

Mother timely appealed. In her notice of appeal, Mother indicated she was appealing from the jurisdiction findings and removal orders as well as "[o]ther orders" entered at the

---

[3]  Law enforcement found Serenity on November 10, 2021, and she was placed in foster care.

10

December 29, 2021 hearing.[4]  We liberally construe the appeal of "other orders" to include an appeal from the orders terminating jurisdiction over Kimberly, Kailey, Harmony, and Precious and awarding sole physical custody to the respective fathers.  (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 ["Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing '"law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced."'"]; *In re Joshua S.* (2007) 41 Cal.4th 261, 272, [children's notice of appeal stating appeal was from the juvenile court orders terminating jurisdiction "without first resolving whether the children will continue to receive funding" was sufficient "to give the Court of Appeal jurisdiction to review the juvenile court's eligibility determination" with respect to state financial assistance (italics omitted)]; see Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally

---

[4]  Mother does not argue in her appellate briefs that the juvenile court erred in removing the children from her physical custody.  In her opening brief, Mother only argues we should reverse the disposition orders if we reverse the jurisdiction findings.  Mother therefore has abandoned any specific challenge to the removal orders.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief."]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 ["'"Issues not raised in an appellant's brief are [forfeited] or abandoned."'"].)

11

construed. The notice is sufficient if it identifies the particular judgment or order being appealed."].)[5]

## DISCUSSION

A.    *Governing Law and Standard of Review*

Section 300, subdivision (b)(1), authorizes the juvenile court to assume jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

---

[5]    Because we construe Mother's notice of appeal to include an appeal from the orders terminating jurisdiction and awarding sole physical custody to the respective fathers, Mother's appeal from the jurisdiction findings and disposition orders as to Kimberly, Kailey, Harmony, and Precious is not moot. (Cf. *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164 [appeal was moot because "to the extent an appellant argues, as here, that the challenged jurisdiction finding resulted in an adverse juvenile custody order and seeks to have that custody order set aside, in addition to the appeal from the jurisdiction finding, an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief."].)

12

"A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601; accord, *In re L.W.* (2019) 32 Cal.App.5th 840, 848; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].) "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Cole L.*, at pp. 601-602; accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["'Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection.'"].) "A parent's '[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Cole L.*, at p. 602; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.)

We review the juvenile court's jurisdiction findings for substantial evidence in light of the whole record. (*In re I.C.* (2018) 4 Cal.5th 869, 892 ["the evidence supporting the jurisdictional findings must be considered "'in the light of the *whole record*'" 'to determine whether it discloses substantial evidence'"]; *In re R.T., supra*, 3 Cal.5th at p. 633 ["'In reviewing the jurisdictional findings and disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports

13

them.'"].)  Substantial evidence is "evidence which is reasonable, credible, and of solid value."  (*In re I.C.,* at p. 892; accord, *In re Cole L., supra*, 70 Cal.App.5th at p. 602.)  "'[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"  (*In re R.T.*, at p. 633; accord, *In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Cole L.*, at p. 602 ["while substantial evidence may consist of inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding"].)  "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders."  (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 328-329.)

B.    *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivision (b)(1)*

Mother contends there was not substantial evidence to support the jurisdiction findings under section 300, subdivision (b)(1), that the children were at substantial risk of physical harm as a result of her marijuana use, mental health and emotional issues, and absences from the home.  The Department focuses in its brief on Mother's repeated absences as a caretaker and her mental illness, arguing they created a risk of serious physical harm to the children.  We agree substantial evidence supports the jurisdiction findings based on Mother's failure to provide adult supervision of the children for extended periods of time.

14

A neighbor reported Mother left the children home alone for days. Kimberly, who had physical and intellectual disabilities, stated that in Mother's absence she and Kailey took care of the younger children—Michelangelo, Harmony, and Precious. Mother was not home by the children's bedtime at 8:30 p.m. And although Mother was generally home by the mornings, sometimes she was not. Kimberly later denied Mother left her and her siblings home without adult supervision for extended periods, but she acknowledged she sometimes did not know Mother's location when Mother left the home. And Kailey told the dependency investigator that at times Mother would stay at Maria's home overnight and come home early the next morning before the children wakened. Harmony reported Mother would leave for days without telling the children where she was going. And Precious confirmed that Mother left the children during the day and returned the following morning. Precious also told Jose that on one occasion the children did not eat anything for two days.

Michelangelo denied Mother left him and his siblings alone overnight, stating Mother was only gone for two to three hours to go shopping. But the juvenile court did not credit Michelangelo's statements, finding the older children (Michelangelo was 11) were not truthful because they "appear to be protecting their mother." And the court found credible Harmony's statement that Mother left the children alone for days.

Mother's conduct in leaving her 16-year old and 14-year old children in charge of caring for their 11-year-old, seven-year-old and six-year-old siblings for extended periods of time, sometimes overnight or for days, with no adult supervision (and no way for the children to contact her) created a substantial risk of harm to

the children, especially to the younger children.  There was no adult present to provide care for the children in case of an emergency, nor was there an adult to meet the children's daily needs.  And on at least one occasion the children did not eat for two days because Mother left them without adequate food.

Mother denied she left the children home alone without adult supervision for extended periods of time.  She claimed she either took Harmony and Precious with her when she ran errands or dropped the children off at the homes of maternal relatives.  But the court found the accounts of the neighbor and children describing an absent mother were more credible.  Moreover, Mother's failure to acknowledge her neglectful conduct further supports the juvenile court's finding the lack of adult supervision created a substantial risk of harm to the children. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision."].)

Because substantial evidence supports dependency jurisdiction under section 300, subdivision (b)(1), based on Mother's failure to provide adult supervision, we need not consider the two other bases for jurisdiction—Mother's marijuana abuse and her mental and emotional problems.  (See *In re I.J., supra*, 56 Cal.4th at p. 773 ["'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the

16

dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'"]; *In re J.N.* (2021) 62 Cal.App.5th 767, 774 [same]; *In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329 [same].)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders, as well as the orders terminating jurisdiction and entering the final custody orders, are affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

17